HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

     Plaintiff,

    v.

WINSTON BONTRAGER and PAULINE
ANDERSON,

     Defendants.

CASE NO. CR12-61RAJ

ORDER ON MOTIONS IN LIMINE

## I.  INTRODUCTION

This matter comes before the court on a motion in limine from Defendant Winston Bontrager, a motion in limine from Defendant Pauline Anderson, and a joint motion from the two Defendants.  As stated herein, the court DENIES the joint motion (Dkt. # 152), GRANTS in part and DENIES in part Mr. Bontrager's motion (Dkt. # 160) except as to a few issues on which it reserves ruling, and GRANTS Ms. Anderson's motion (Dkt. # 163) except as to a single issue on which the court reserves ruling.

## II.  DISCUSSION

**A.  Joint Motion to Admit Single Statement of Henry Pierman**

The court denies this motion, in which Defendants ask the court to admit an isolated hearsay statement from a recently deceased tax accountant that he made an error in amending one or more tax returns of Jason Bontrager.  That statement appears in a Government investigative agent's report of his February 2012 interview with Mr.

ORDER – 1

1
2
3
4
5
6
7
8

Pierman.  Defendants offer a tenuous theory of the relevance of the statement.  They contending that the error to which Mr. Pierman referred relates to the characterization of Jason Bontrager's purported investment in a company that Winston Bontrager controlled. Ms. Anderson made a similar purported investment in the company in the same way and at the same time.  Thus, in Defendants' view, Mr. Pierman's statement tends to prove that it is Mr. Pierman, not any Defendant, who is culpable for any error in the characterization for tax purposes of that investment.  The court assumes, without deciding, that a jury could make that inference based on Mr. Pierman's isolated statement.

9
10
11
12
13
14
15
16
17
18
19
20

The problem with Mr. Pierman's statement is that the Government contends that Plaintiffs have taken it utterly out of context.  Mr. Pierman, according to the agent who interviewed him, confessed only to an error he made because Jason Bontrager misled him about the nature of the purported investment, which was in reality a loan from a third party.  Defendants insist that these details do not matter, because whereas Mr. Pierman's bare statement of error is a statement against interest within the hearsay exception of Federal Rule of Evidence 804(b)(3)(A), his remaining statements in the interview are not. The court disagrees.  Mr. Pierman's statement is a statement against interest only when completely stripped of context.  The court cannot permit Defendants to introduce Mr. Pierman's statement of error without letting the Government supplement that statement with other statements from Mr. Pierman explaining what he meant.  Accordingly, the court will not permit the introduction of any statements from Mr. Pierman.

21

**B.      Mr. Bontrager's Motion**

22
23
24
25
26

Mr. Bontrager first asks the court to exclude evidence that Tom Snook, the principal of Media Art, Inc., sued Alexandria Investment Co. (an entity that Mr. Bontrager controlled) in Clark County Superior Court in the wake of the sale of real property in which Media Art once held an interest.  The sale is one of several transactions in which one or both Defendants allegedly did not accurately report taxable proceeds.

27
28

ORDER – 2

1
2
3
4
5
6
7
8
9
10

This aspect of Mr. Bontrager's motion is the first example of a pattern that recurs several times in the motion and in the Government's response.  There is, in the court's view, little question that Mr. Snook has relevant testimony to offer about the transactions at issue here.  Mr. Bontrager does not argue otherwise.  He merely asks the court to exclude evidence of the lawsuit itself.  He contends that it is scarcely relevant, if at all, and whatever minimal probative value it has is substantially outweighed by the likelihood that it will prejudice the jury by suggesting that Mr. Bontrager has a propensity to act wrongfully.  The Government offers little argument that it is necessary to introduce evidence of the lawsuit itself in order to offer evidence of the relevant underlying conduct.

11
12
13
14
15
16
17

The Government may introduce only as much evidence of the existence of the lawsuit as is strictly necessary to present its case.  In this instance, for example, it would appear that the only reason that the lawsuit itself is relevant is that it resulted in a settlement in which Mr. Snook forgave a large loan to Mr. Bontrager, and Mr. Bontrager allegedly did not report the forgiven loan as taxable income.  The jury is entitled to know that Mr. Snook forgave the loan, but the jury has no need to know that it was forgiven in the context of a lawsuit or the settlement of a lawsuit.

18
19
20
21
22
23
24
25
26

The court denies Mr. Bontrager's motion to exclude a Washington excise tax affidavit in which he characterized a transfer of property (between Eastgate Plaza, LLC, which Defendants controlled, and Sifton/Orchards, LLC, an entity that Michael Mastro controlled) as a nontaxable gift.  Mr. Bontrager insists that the suggestion that he has evaded excise taxes is both unduly prejudicial and impermissible evidence of his propensity to commit tax crimes.  The Government persuasively argues, however, that the evidence is separately relevant because it shows that Mr. Bontrager's statements that the "sale" in question was actually a non-taxable corporate change in identity are inconsistent even with his own characterization of the transaction.  The court finds that

27
28

ORDER – 3

the probative value of the affidavit is not substantially outweighed by its tendency to create unfair prejudice.  The affidavit is admissible.  The court will consider an appropriate limiting instruction if Defendants submit one.

Like the lawsuit between Media Art and Alexandria Investment, the jury need not hear evidence about an arbitration between Defendants' Eastgate Plaza entity and an entity known as the Birtcher Business Center.  The subject matter of that arbitration is wholly irrelevant – it concerns a dispute over whether Eastgate Plaza satisfied certain development obligations.  Certain aspects of the arbitration have tangential relevance. For example, Mr. Mastro allegedly agreed to pay off the arbitration award in connection with the Eastgate-Sifton transaction mentioned above, which is inconsistent with Defendants' efforts to characterize that transaction as something other than a taxable sale. Also, Mr. Bontrager apparently gave deposition testimony at the arbitration that is relevant to this case.  A purported loan secured by a property in which Defendants held an interest may or may not have been part of an effort to hide additional taxable income. Those aspects of the arbitration are relevant, but the Government can introduce evidence of them without ever mentioning the arbitration or its subject matter.

The court grants Mr. Bontrager's request to exclude evidence of a home remodeling transaction that he allegedly attempted to structure to avoid paying sales tax. Even if the Government could prove that the transaction was structured as it alleges, the form of the transaction is too dissimilar from the transactions in the indictment to be illustrative of a common scheme or otherwise to have much probative value.  The potential for prejudice and waste of time substantially outweighs whatever probative value the evidence would have.

The Government agrees that it will not attempt to introduce evidence of the conduct underlying Mr. Bontrager's 1994 wire fraud conviction.  Only two disputes remain.  First, the Government insists that the jury must see an unredacted version of the

ORDER – 4

1994 criminal judgment, which memorializes both the wire fraud conviction and the tax-related conviction that the court has already deemed admissible. In addition, the judgment designates an Oregon pension fund (in addition to the Internal Revenue Service) as a recipient of restitution. The court has already ruled that the jury may hear evidence of the tax-related conviction, and that it may hear that Mr. Bontrager owed restitution as a result of that conviction. There is no need for the jury to see references to the wire fraud conviction or the additional restitution recipient. It will suffice for the jury to be informed of the conviction and the total amount of restitution. The parties shall discuss among themselves whether to accomplish this by redacting the 1994 judgment or by simply reaching a stipulation that informs the jury of the tax-related aspects of the 1994 judgment and the restitution obligation.

The court will not, at this time, rule out the possibility that the Government may rely on the 1994 wire fraud conviction for impeachment in the event that Mr. Bontrager testifies. Because of the age of the conviction, the court is unlikely to permit its introduction simply as evidence of dishonesty. If, however, Mr. Bontrager offers testimony for which the 1994 wire fraud conviction would serve as more specific impeachment, the court will consider a request from the Government to ask questions regarding the wire fraud conviction. In no event shall the Government or any of its witnesses make reference to the 1994 wire fraud conviction in front of the jury without obtaining leave of court.

The court reaches the same ruling as to the use of a 1983 conviction against Mr. Bontrager arising out of false statements in a loan application. That evidence is relevant, if at all, as impeachment evidence. The court will permit its introduction only in the event that Mr. Bontrager testifies and his testimony is such that the 1983 conviction serves to specifically impeach portions of his testimony. The Government and its witnesses may not reference the conviction without leave of court.

ORDER – 5

1          The court will not permit the Government to reveal the indictment against either

2    Defendant to the jury.  The Government has already indicated that it has no plans to

3    introduce the indictment as evidence, but suggests that it may do so if the parties are

4    unable to agree on charts or other demonstrative exhibits that summarize the counts of the

5    indictment.  The court will resolve disputes over demonstrative exhibits if necessary,

6    although it expects the parties to resolve them on their own.  In any event, the

7    Government will not introduce the indictment to the jury.

8          The parties are apparently still attempting to resolve disputes over various charts

9    that serve as evidentiary summaries.  The court makes no ruling on the use of those

10   charts.  The parties must update the court on the status of their disputes at Monday's

11   pretrial conference.

12         The Government agrees that it will not attempt to introduce evidence of the

13   statements of Harold Suchan, Jack Banks, or Henry Pierman, all of whom are deceased.

14   The Government contends that it can introduce business records that these witnesses

15   prepared because it has other witnesses who can authenticate those records.  The court

16   has no basis to admit or exclude those records at this time.

17         The court will permit Yamuna Zake to testify.  She may have personal knowledge

18   of facts relevant to her late husband's relationship with Mr. Bontrager.  Defendants are

19   free to object to questions that call for hearsay or statements beyond her personal

20   knowledge, but the court will not prohibit her from testifying.

21         Finally, and as a transition to Ms. Anderson's motion in limine, the court rules that

22   the Government may not offer evidence of Ms. Anderson's or Mr. Bontrager's violations

23   of the conditions of pretrial release in this case.  In the unlikely event that the conduct

24   underlying those violations is relevant, the Government may offer evidence of the

25   conduct if it obtains advance permission from the court.  In no event, however, may the

26   Government inform the jury that any Defendant was or was not subject to pretrial release

27

28   ORDER – 6

or that pretrial release was invoked.  That ruling stands whether the Government attempts to offer the evidence for impeachment purposes or for any other purpose.

**C.      Ms. Anderson's Motion**

Ms. Anderson joins in the aspects of Mr. Bontrager's motion that relate to her, and the court's rulings on that motion apply equally to her.

The only aspect of her motion that does not overlap Mr. Bontrager's is her request to exclude references that Mr. Bontrager made in documents and to other witnesses regarding her personal wealth.  With one exception, she has provided no specific evidence of such references.  She asserts, however, that the statements do not fall within the scope of the hearsay exception for statements of a coconspirator in furtherance of a conspiracy.  *See* Fed. R. Evid. 801(d)(2)(E).  The court lacks sufficient context to resolve this motion.  In addition, the court is concerned that no one has raised the potential Sixth Amendment consequences of relying on these statements.  *See*, *e.g.*, *Bruton v. United States*, 391 U.S. 123, 137 (1968) (holding that introduction of non-testifying codefendant's statement incriminating defendant violates the Confrontation Clause).  The court will require the parties to address these issues at Monday's pretrial conference.

### III.  CONCLUSION

For the reasons stated above, the court DENIES Defendants' joint motion in limine (Dkt. # 152), GRANTS in part and DENIES in part Mr. Bontrager's motion in limine (Dkt. # 160) except as to a few issues on which it reserves ruling, and GRANTS Ms. Anderson's motion (Dkt. # 163) except as to the issue on which it reserved ruling.

Dated this 13th day of June, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 7